IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BAYLOR MEDICAL CENTER AT IRVING D/B/A BAYLOR SCOTT & WHITE MEDICAL CENTER – IRVING, | § § § § | |
| Plaintiff, | § § | Case No. _____ |
| v. | § § | |
| ROBERT F. KENNEDY, JR., In his Capacity as Secretary of the U.S. Department of Health and Human Services, | § § § § | |
| Defendant. | § § § | |

ORIGINAL COMPLAINT FOR JUDICIAL REVIEW OF FINAL AGENCY DECISION

This is a civil action by Baylor Medical Center at Irving d/b/a Baylor Scott & White Medical Center – Irving (hereinafter "Plaintiff," "Provider," or "Plaintiff Hospital") against the Secretary for the United States Department of Health and Human Services ("HHS")[1] for judicial review of a final decision rendered on February 6, 2026, by the Provider Reimbursement Review Board ("PRRB" or "Board"), a component of HHS. Judicial review is sought is the dismissal of PRRB Case No. 21-0282. The basis for this lawsuit is the Secretary's willful refusal to follow clear, unambiguous federal law. Plaintiff Hospital specifically challenges the Board's dismissal of its' administrative appeal of the Medicare Administrative Contractor's ("MAC") refusal to include all Medicaid eligible days, including section 1115 waiver days, in the Medicaid Fraction for the cost year at issue in this case (CYE 6/30/2017).

---

[1] The Secretary is the proper defendant in this appeal. *See* 42 C.F.R. § 405.1877(a)(2).

**Original Complaint for Judicial Review of Final Agency Action – Page 1**

## I.   INTRODUCTION

1.      This timely action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Act"), 5 U.S.C. §§ 706 *et seq.* (the Administrative Procedure Act or "APA"), 28 U.S.C. § 1361 (mandamus), and other authorities.  The Medicare payments here pertain to how inpatient hospital days should be counted for purposes of calculating the Plaintiff Hospital's Medicare Disproportionate Share Hospital ("DSH") payments for the fiscal year ("FY") ending on June 30, 2017.

2.      The Board's final decision, its dismissal of Plaintiff Hospital's individual appeal, was noticed by letter dated February 6, 2026 (dismissal notice attached as Exhibit A).

3.      The Secretary's MAC refusal to follow the clear dictates of the Centers for Medicare & Medicaid Services ("CMS") Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) (attached as Exhibit B), which provides an independent legal basis, mandamus, for this action.

## II.   JURISDICTION AND VENUE

4.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision), 28 U.S.C. §§ 1331 (federal question), and 1361 (mandamus). *See Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 811, 813-15 (D.C. Cir. 2001); *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011). Jurisdiction also is available under 28 U.S.C. § 1331 where the agency renders a final determination for which there is no administrative appeal available.  *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

5.      Venue lies in this district pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e)(1) as the Plaintiff is located and transacts business (as does the Secretary) within this district's Dallas Division.

**Original Complaint for Judicial Review of Final Agency Action – Page 2**

## III.    PARTIES

6.    Plaintiff, located at 1901 N. MacArthur Blvd., Irving, Texas, 75061, had at all relevant times a Medicare provider agreement and was eligible to participate in the Medicare program under Provider No. 45-0079.  During the relevant time periods pertinent to this complaint, FY 2017, Plaintiff furnished inpatient and outpatient hospital services to Medicare patients.

7.    Defendant offices at 200 Independence Avenue, SW, Washington DC 20201 and is the federal officer responsible for the administration of the Medicare program.  Defendant Kennedy, Jr. is sued in his official capacity.

## IV.    THE MEDICARE PROGRAM

8.    The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395c. The Medicare program is federally funded and administered by the Secretary through CMS and its contractors.  42 U.S.C. § 1395kk(a); 42 Fed. Reg. 13,262 (Mar. 9, 1977).  CMS implements the Medicare program, in part, through rulemaking.  *See* 42 C.F.R. § 401.108. In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other interpretative rules implementing the Medicare program, which are usually compiled in CMS manuals.  The Secretary also issues other sub-regulatory guidance which generally do not have the force and effect of law.  This civil action involves Medicare Part A.  Part A provides coverage and payment for, among others, inpatient hospital services on a fee-for-service basis.  42 U.S.C. §§ 1395c to 1395i-6.  Such items/services are furnished to Medicare beneficiaries by providers of services, including hospitals, that have entered into written provider agreements with the Secretary pursuant to 42 U.S.C. § 1395cc.  Providers are paid (reimbursed) by CMS through MACs.  *See* 42 U.S.C. § 1395kk-1(a).

9.      Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of Medicare Part A payment owed to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS.  *See* 42 C.F.R. § 405.1803.

10.      Effective with cost reporting years beginning on or after October 1, 1983, hospitals are reimbursed under the Hospital Inpatient Prospective Payment System ("IPPS") for inpatient hospital operating costs.  *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare DSH payment.  *See* 42 U.S.C. § 1395ww(d)(5)(F).

11.      Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients.  These higher costs have been found to result in part from the poorer health of those patients.  The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing such services.

12.      Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. § 1395ww(d)(5)(F). The DSH program was in effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

13.      There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" and the less common "Pickle method." See 42 U.S.C. § 1395ww(d)(5)(F)(i)(I)-(II).  Plaintiff Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH

**Original Complaint for Judicial Review of Final Agency Action – Page 4**

payment, is based on a hospital's disproportionate patient percentage (hereinafter, "DPP"). 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi).

14. The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. § 1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" of a hospital's low-income patients, rather than having CMS count the actual number of those patients.

15. The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients whilst *also* being entitled to Supplemental Security Income ("SSI") benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.

16. The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

**Original Complaint for Judicial Review of Final Agency Action – Page 5**

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

17.     The Medicaid Fraction, therefore, is intended to account for hospital inpatients "…who were not entitled to benefits under [Medicare] [P]art A," who were "…eligible for medical assistance…" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.  The Medicaid Fraction is at issue in this case.

18.     The statute further provides for purposes of determining the Medicaid Fraction "…the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under subchapter XI." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). Patient days of patients who receive benefits under a demonstration project approved under subchapter XI of the Social Security Act are commonly referred to as "section 1115 waiver days" (because of the Secretary's waiver or demonstration project authority under section 1115 of the Social Security Act). The Secretary's non-inclusion of section 1115 waiver days in Plaintiff Hospital's Medicaid Fraction for its 2017 cost year is at the heart of this action.

19.     At the close of its FY, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. For Medicare each hospital's MAC is required to analyze and audit the hospitals annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803.  In addition to including costs on its cost report, a hospital also is required to make a claim, or alternatively self-disallow, for any modification to its basic IPPS payment adjustment, such as the DSH adjustment.

**Original Complaint for Judicial Review of Final Agency Action – Page 6**

20.    The Medicare Act provides that if a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in its NPR, and the hospital satisfies the amount in controversy requirements (not an issue in this case), the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR). 42 U.S.C. § 1395oo(a).  The statute allows a hospital that is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of 42 U.S.C. § 1395ww to obtain a PRRB hearing by requesting the hearing within 180 days after notice of the Secretary's final determination.  42 U.S.C. § 1395oo(a)(1)(A)(ii), (a)(3).

21.    The regulations interpret the statutory requirements by stating that "…the date of receipt by the Board of the provider's hearing request must be no later than 180 days after the date of receipt by the provider of the final contractor or Secretary determination." 42 C.F.R. § 405.1835(a)(3).

22.    In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure.  The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877.  The Secretary has delegated authority under the statute to review PRRB decisions to the CMS Administrator.  Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

23.    A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision in the U.S. District Court for the judicial district in which

**Original Complaint for Judicial Review of Final Agency Action – Page 7**

the hospital is located.  42 U.S.C. § 1395oo(f)(1). Pursuant to 42 C.F.R. § 405.1801(a)(1)(iii), the date of receipt by a party involved in proceedings before the PRRB is presumed to be five days after the date of issuance of a PRRB document.[2] As such, the deadline in this case to seek judicial review is April 12, 2026.  This filing is therefore timely.

## V.    SECTION 1115 WAIVER DAYS AND THE SECRETARY'S ACQUIESCENCE

24.    In *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018), the Court rejected the Secretary's assertion that for hospital days under a section 1115 waiver to be included in the Medicaid Fraction, the terms of waiver agreement between the State Medicaid agency and the Secretary must contain an explicit statement that patients covered by the waiver are "…eligible for inpatient hospital services."  *See id.* at 46.  That Court disagreed. *See id.* at 46-47.  According to the *HealthAlliance* court:

> [i]t is clear from the plain language of the regulation's text [at 42 C.F.R. § 412.106(b)(4)(i)] that patients who are eligible to receive comprehensive medical care through an insurance program authorized under a section 1115 waiver (as evidenced by their eligibility for inpatient hospital services) are to be included in the Medicare reimbursement formula, and whether or not the waiver agreement through which the Secretary authorized the program *says* anything about their eligibility for inpatient hospital services is irrelevant to the calculation of a hospital's disproportionate share hospital adjustment.

*Id.* at 47. This remains true in this dispute.

25.    A similar issue was presented in *Forrest General Hospital v. Azar*, 926 F.3d 221 (5th Cir. 2019). The Secretary claimed an uncompensated care pool related to Hurricane Katrina was not part of a section 1115 waiver. *See id.* at 232.  In disagreeing, the Fifth Circuit found the

> …excellent opinion in *HealthAlliance Hospitals, Inc. v. Azar* extremely persuasive. That opinion convincingly explains why the law governing the inclusion of section

---

[2] Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. § 1395oo(f). Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within 30 days of a "final determination."

**Original Complaint for Judicial Review of Final Agency Action – Page 8**

1115 waiver patient days in the Medicaid fraction is straightforward: the plain regulatory text demands that such days be included - period.

*Id.* at 234 (citations omitted). The Fifth Circuit also held that the statute was unambiguous and noted with respect to 42 C.F.R. § 412.106(b)(4) that, "[w]hat does *not* matter for purposes of this regulation is what the plan documents say about eligibility for particular services." *See Forrest General at* 228-229. Following *Forrest General*, the Secretary continued to litigate, and lose, the issue whether days associated with patients who were covered under a section 1115 waiver that included an uncompensated care pool, and which did not specifically mention inpatient hospital benefits, should be included in the Medicaid Fraction. *See, e.g., Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121, 122 (D.C. Cir. 2020).

26.     As a result of those losses, CMS issued guidance acquiescing to the Fifth Circuit and D.C. Circuit decisions. (*See* Ex. B). The manual instructions provide that upon a hospital submitting a listing of its section 1115 waiver days, the hospital's MAC must do the following:

> [f]or cost reports that are open via a [] (PRRB) appeal that has not yet been heard before the PRRB, [s]ection 1115 days will be reviewed through the normal Administrative Resolution process within 24 months of the CR implementation date. In order for the Medicare Administrative Contractor (MAC) to consider the providers' Section 1115 days in recalculation of the Medicaid fraction, the following review shall take place, only as deemed necessary by the Uniform Desk Review process or Administrative Resolution process:
>
> 1. For providers with patients whose inpatient stay is covered by a Section 1115 waiver program funding pool, which pays health care providers that provide uncompensated care to patients who are uninsured or underinsured and is matched by Title XIX federal funds, the MAC shall review the State's Section 1115 program documents to determine the method by which the provider identifies eligible inpatient stay days.
>
> 2. The MAC shall select a sample of accounts from the provider's submitted Section 1115 log for further review.
>
> 3. The MAC shall request documentation from the provider for the selected sample and review the documentation to ensure that: a) the provider has accurately included the inpatient stay in the Section 1115 waiver program for reimbursement through the funding pool based on the provider's Section 1115 approved program

**Original Complaint for Judicial Review of Final Agency Action – Page 9**

documents; and b) has accurately included the inpatient stay on the Section 1115 log.

4. The MAC shall review the provider's applicable documentation that details the patient's length of stay and the acute-care unit that the patient's stay occurred to verify the patient's length of stay in an inpatient acute section of the hospital.

(*Id* at 4).

27.    In the FY 2024 IPPS rulemaking, the Secretary proposed and finalized new and restrictive regulations on including section 1115 waiver days in the Medicaid Fraction; however, these regulations are prospective only. *See* 88 Fed. Reg. 58640, 59017 (Aug. 28, 2023) ("Finally, we are finalizing as proposed that our revised regulation would be effective for discharges occurring on or after October 1, 2023").

## VI.    FACTUAL BACKGROUND

*A.    Dismissal of Section 1115 Waiver Days "Issue."*

28.    On March 25, 2020, the MAC issued an NPR for Plaintiff's cost year ending June 30, 2017. On September 17, 2020, the Board received Plaintiff's individual appeal request (attached as Exhibit C), appealing its DSH adjustment. Plaintiff timely appealed the MAC's non-inclusion of Medicaid eligible days, stating that "[t]he MAC, contrary to the regulation, failed to include *all Medicaid eligible days, including but not limited to* Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." (Ex. A at 4, Ex. C at 28) (emphasis added). The italicized language above demonstrates that Plaintiff appealed *all* Medicaid eligible days, including section 1115 waiver days.

29.    Notwithstanding the noted language, on February 6, 2026, the Board dismissed Plaintiff's appeal of what it termed the "Section 1115 waiver days issue." (Ex. A at 11). The Board provided one primary reason for its dismissal, stating "[b]ecause the Provider did not raise the

Section 1115 waiver days prior to the deadline to add issues, and it is a distinct issue, the Board finds that the issue was not properly or timely appealed. The Medicaid eligible days issue as stated in the original appeal request cannot be construed to include Section 1115 waiver days." That is, the Board contends section 1115 waiver days are not Medicaid eligible days but are instead a separate and distinct issue which, the Board claimed, the Provider failed to include in its initial appeal request. (Ex. A at 13).

30.    The Board proffered several alternative rationales to support its decision, but all fail to do so. *Id.* It claimed that: (1) "…there is no indication that any Section 1115 waiver days were included with the as-filed cost report which, if true, would make them an unclaimed cost and provide an independent basis for dismissal;" (2) "…even if the Provider had included in its appeal request (which it did not), the Provider failed to properly develop the issue in its [preliminary position paper] filing;" and (3) "…even in the Provider's final [position paper], the Provider fails to identify what Section 1115 waiver program(s) are involved and whether or not the Section 1115 waiver days at issue would qualify under 42 C.F.R. § 412.106(b)(i)-(ii) as 'days attributable to populations eligible for Title XIX matching payments through a waiver approved under Section 1115. . .' and the patients underlying those days are 'deemed eligible for Medicaid' based on 'the patient [being] eligible for inpatient hospital services . . . under a waiver authorized under Section 1115(a)(2) . . . on that day, regardless of whether particular items or services were covered.' Rather, the final [position paper] is perfunctory in that it only makes cursory conclusions. [n. 23]" (Ex. A at 13).

31.    In footnote 23 of its dismissal, the Board questioned specific language in Plaintiff's final position paper submitted on November 25, 2025 (attached as Exhibit D), stating:

[f]or example, [Plaintiff] cites to *Forrest General Hosp.*, 926 F.3d 221 (5th Cir. 2019) for the proposition that 'the plain language of the statute and [the] regulations require[s] inclusion in the Medicaid Fraction of the days belong[ing] to individual[s] who are included in a section 1115 demonstration project that provides benefits through an uncompensated care pool.' However, BSW fails to explain why this sweeping statement is relevant to the § 1115 waiver days at issue. Is BSW asserting that the § 1115 waiver days at issue relate to an uncompensated care pool? Is that pool similar to that in *Forrest General Hosp.*? BSW fails to brief the merits of its claims and fails to establish the Board's jurisdiction over the § 1115 waiver day issue as required by 42 C.F.R. § 405.1853(b)(2). Indeed, the quoted sentence is the only time the final position paper references 'uncompensated care pool.'

(Ex. A at 13-14, n. 23; *see* Ex. D at 12).

B.    *Substantial Evidence Supports Plaintiff's Position.*

32.    As mentioned above in Section V, "…the law governing the inclusion of § 1115 waiver patient days in the Medicaid fraction is straightforward: The plain regulatory text demands that such days be included—period."[3] This statutory and regulatory interpretation was affirmed by the court in *Bethesda Health Inc., v. Azar*,[4] and was accepted by CMS in its publication of Change Request 12669, Transmittal No. 11912 (March 16, 2023). (Ex. B at 4). As such, there is no statutory difference between section 1115 waiver days and Medicaid eligible days in terms of their inclusion in the numerator of the Medicaid Fraction and administrative appeals thereof.

33.    The Board's distinction of a purely *fictional* "Section 1115 waiver days issue" was disingenuous (emphasis added). The issue properly before the Board in Plaintiff's administrative appeal was the inclusion of all Medicaid eligible days for purposes of calculating DSH reimbursement, which would definitionally include section 1115 waiver days.

34.    The regulations at 42 C.F.R. § 405.1835 contain requirements for appealing an issue and a time limit on adding an issue – not on "sub-issues" or "components" of an issue. Both

---

[3] *Forrest General Hospital v. Azar*, 926 F.3d 234 (5th Cir. 2019) (referring to the opinion in *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018)).
[4] *Bethesda Health Inc., v. Azar*, 389 F. Supp. 3d 32, (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020)

**Original Complaint for Judicial Review of Final Agency Action – Page 12**

a June 25, 2004, proposed rule (69 Fed. Reg. 35716) and a May 23, 2008, final rule (73 Fed. Reg. 30190) support that an "issue" is encapsulated by a specific cost report adjustment. They do not slice and dice an "issue" into component parts, including the specific reason why Medicaid eligible days were not counted in the numerator of the Medicaid Fraction of the DPP.

35.    For example, the proposed rule states that:

> … to preserve its appeal rights, a provider must either claim an item on its cost report where it is seeking reimbursement that it believes to be in accordance with Medicare policy, or self-disallow the item where it is seeking reimbursement that it believes may not be in accordance with Medicare policy … Note that we are using the term "item" instead of "cost" to emphasize that our proposed policy would refer to determinations of amounts due to providers subject to a prospective system as well as determinations of reimbursement due to providers that are paid under cost reimbursement principles.

69 Fed. Reg. at 35722.  Similar language appears in the final rule at 73 Fed. Reg. 30194. A MAC's cost report determination is synonymous with an "adjustment." In this case, the same adjustment to so-called "traditional Medicaid eligible days" also governs Medicaid eligible days associated with beneficiaries covered under a section 1115 waiver. (Ex. A at 12). To the extent that the regulations were interpreted as requiring providers to appeal "sub-issues" or "components" of issues, the regulations would impermissibly restrict the PRRB's jurisdiction as set forth in the statute.

C.    *The Board's Rule 8 Is Arbitrary and Invalid.*

36.    Rule 8 of the August 29, 2018, version of the PRRB Rules—which provides that "…each contested component must be appealed as a separate issue…"—is internally inconsistent with Rule 7.  Whereas Rule 8 refers to "components" of an issue, and gives section 1115 waiver days as an example, Rule 7.2.1 provides that, for purposes of identifying the "issue" under appeal, the provider needs to submit an "issue title and a concise issue statement…" that describes the cost report adjustment, including the cost report adjustment number, the controlling authority, why the

**Original Complaint for Judicial Review of Final Agency Action – Page 13**

cost report adjustment is incorrect, how the payment should be determined differently, the reimbursement effect, and the basis for jurisdiction before the PRRB. (*See* Ex. A at 11). Thus, Rule 8 is inconsistent with both the regulations AND Rule 7.

37.     Notwithstanding the paradoxical nature of PRRB Rules 7, 8, and the underlying regulations, in accordance with Rule 7.2.1 of the August 29, 2018, version of the PRRB Rules, the Provider appealed the "Disproportionate Share Hospital Payment - Medicaid Eligible Days" issue with respect to adjustment numbers 5, 7, 31, and S-D from the adjustment report issued by the Provider's designated MAC in connection with the Provider's FY 2017 cost report. The S-D adjustment refers to all items self-disallowed or protested on the Provider's cost report, which includes an amount relating to the inclusion of *all* Medicaid eligible days, including section 1115 waiver days.  (*See* Ex. C at 28, 34-35, 42, 47).

38.     Whereas Rule 7 directs providers to Rule 8, Rule 8 directs the providers to Rule 7, making this type of circular reasoning a thinly veiled attempt to obfuscate providers rather than enlighten them. Indeed, all is served by that confusion is an endless loop of inconsistent propositions, creating ambiguity and logically flawed explanations that leaves providers baffled.

39.     Moreover, Rule 8 is predicated on the supposed need "[t]o comply with the regulatory requirement…" regarding specifically identifying the items in dispute.  Rule 8 proceeds from the misunderstanding that the regulations require "components" of an issue must be identified, when in fact, and as explained above, this is not true.  For this reason alone, Rule 8's requirement to identify "components" of an issue is arbitrary and capricious, thus, invalid.

40.     The supposed requirement that a provider go further and specify not only DSH reimbursement, and not only the Medicaid eligible days portion of such reimbursement, but also the section 1115 waiver days component of Medicaid eligible days, is not found in the statute, but only in the PRRB rules.  The Board has no authority to expand or constrict its jurisdiction given

**Original Complaint for Judicial Review of Final Agency Action – Page 14**

to it by Congress. Its requirement that providers must describe "components" of issues simply to obtain a hearing conflicts with the statute and is facially invalid.

41.    In *Azar v. Allina Health Services et al.*, the Supreme Court held "…the phrase 'substantive legal standard,' which appears in § 13955hh(a)(2) and apparently nowhere else in the U. S. Code, cannot bear the same construction as the term 'substantive rule' in the APA…" and that a new policy that establishes or changes a "substantive legal standard" that affects Medicare benefits must be subject to the statutory process of public notice-and-comment rulemaking. *See Azar v. Allina Health Services et al.*, 587 U.S. 566, 579, (2019); *see also* 42 U.S.C. § 1395hh(b). The Supreme Court did not disturb the D.C. Circuit's holding below that "…the Medicare Act requires notice-and-comment rulemaking for any (1) 'rule, requirement, or other statement of policy' that (2) 'establishes or changes' (3) a 'substantive legal standard' that (4) governs 'payment for services.'" *Allina Health Servs. v. Price*, 863 F.3d 937, 943 (D.C. Cir. 2017). Nor did it disturb the D.C. Circuit's holding that "'[s]ubstantive law' is law that 'creates, defines, and regulates the rights, duties, and powers of parties.'" *Id.*

42.    Rule 8 of the August 29, 2018, version of the PRRB Rules—in effect at the time of this appeal and acts as a logical extension of Rule 8 of the August 21, 2008, version of the PRRB Rules—specifies that certain issues must be appealed separately. Rule 8 of the August 21, 2008, version of the PRRB Rules changed a "substantive legal standard" with respect to payments under the Medicare Act because it defines or regulates the rights of providers to proceed before the PRRB. As such, it should have but did not go through notice-and-comment rulemaking, and it along with all subsequent versions of Rule 8 are therefore invalid under clear Supreme Court precedent. *See, e.g., Allina Health Services et al.*, 587 U.S. at 579.

*D.    The PRRB's Alternative Reasons for Dismissal were Arbitrary and Capricious.*

43.    First, the PRRB's assertion that it was an independent basis for dismissal that "…there is no indication that any of the Section 1115 waiver days were included with the as-filed cost report…" was arbitrary and capricious, especially because MACs frequently accept days identified *after* the cost report is filed. (Ex. A at 13).  The total count of Medicaid eligible days is a variable aspect of a hospital's cost report that depends on factors that can change after the hospital's initial cost report is filed. The inherent retroactive nature of Medicaid eligibility determinations means that a provider will never know who are Medicaid patients at the time of admission.  As is the case with other Medicaid eligible days, the treatment of this variability likewise applies to section 1115 waiver days.

44.    Second, with respect to the proper development and identification of "…the specific[section] 1115 waiver program(s) at issue…" in Plaintiff's preliminary and final position papers, the Board's citation to and reliance on 42 C.F.R. §§ 405.1853(b)(2)-(3), 42 C.F.R. § 412.106(b), and Board Rules 25 and 27 to support its decision was arbitrary and capricious. (Ex. A at 13).  42 C.F.R. §§ 405.1853(b)(2)-(3), in pertinent part, provides only:

> (2) Each position paper must set forth the relevant facts and arguments regarding ... the merits of the provider's Medicare payment claims for each remaining issue.

> (3) Exhibits regarding the merits of the provider's Medicare payment claims may be submitted in a timeframe to be decided by the Board through a schedule applicable to a specific case or through general instructions.

Nothing in the regulation requires a provider to identify "…the specific [section] 1115 waiver program(s) at issue…" with its position papers.

45.    Moreover, 42 C.F.R. § 412.106(b) pertains only to requirements for whether days should be counted *by the MAC* as Medicaid-eligible in a hospital's DSH calculation, not requirements for the Board's jurisdiction over the Provider's appeal. Similarly, neither Board Rule

25 nor 27 require identification of the "…the <u>specific</u> [section] 1115 waiver program(s) at issue." (Ex. A at 13). The Board's appeal to this supposed requirement was disingenuous at best as there was, during the fiscal year under appeal and when the Hospital's appeal was filed, *only one Texas Section 1115 waiver program*, the Texas Healthcare Transformation and Quality Improvement Program. (*See CMS Special Terms and Conditions* at 47-49).

46.     Plaintiff, in support of the inclusion of section 1115 waiver days in its Medicaid Fraction, explained in its final position paper that "CMS has acquiesced in *Bethesda* and is now following the statute and the plain meaning of its own regulations (which regulations represent the official policy of CMS all along) and [should be] properly accounting for 1115 Waiver days as Medicaid Eligible days. *See* CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023), attached as Exhibit P-3." (Ex. D at 12-13). The Board included only the first of three court opinions cited by Plaintiff[5] when discussing the inclusion of section 1115 waiver days in its Medicaid Fraction to demonstrate that Plaintiff's final position paper failed "…to brief the merits of its claims and fails to establish the Board's jurisdiction over the section 1115 waiver day issue as required by 42 C.F.R. § 405.1853(b)(2)." (Ex. A at 14, n. 23).

47.     The DC Circuit's *Bethesda* opinion, as well as the *Forrest General Hospital* and *HealthAlliance Hospitals, Inc.* opinions cited as "well-reasoned" therein, directly support Plaintiff's claim regarding the merits of the inclusion of section 1115 waiver days in its Medicaid Fraction. *See Bethesda Health Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020). CMS' acquiescence to the D.C. Circuit's holding in *Bethesda* in its March 16,

---

[5] The Board excluded Plaintiff's secondary and tertiary citations following *Forrest General Hosp.*, 926 F.3d 221 (5th Cir. 2019), namely *HealthAlliance Hospitals, Inc. v. Azar*, 346 F. Supp. 3d 43(D.D.C. 2018) and *Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32, (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020). (Ex. D at 12).

**Original Complaint for Judicial Review of Final Agency Action – Page 17**

2023, publication further establishes the Board's jurisdiction over the section 1115 waiver days at issue as part of the Medicaid Eligible Days issue, contrary to the Board's assertion that it is a "distinct issue." (Ex. A at 13).

48. Finally, the Board's comparison of Plaintiff's language in its initial appeal and final position paper to the provider's language in *Evangelical Community Hospital, et al. v. Becerra* misses the mark. Plaintiff does indeed "…specify which portion of the calculation was incorrect…" and "…how the fraction should have been calculated differently…" in its initial issue statement stating that, "[t]he MAC, contrary to the regulation, failed to include ***all Medicaid eligible days***, ***including but not limited to*** Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." (Ex. A at 4, Ex. C at 28) (emphasis added).

49. Further, Plaintiff stated in its final position paper that its "…issue is whether the [MAC] included in the Provider's Medicaid Fraction of the disproportionate patient percentage all Medicaid eligible days (including section 1115 waiver days)," specifically stating that, "[b]ased on the Listing of Medicaid Eligible days being sent under separate cover, including Section 1115 waiver days (redacted copy to follow), the Provider contends that the total number of days reflected in its 2017 cost report does not reflect an accurate number of Medicaid eligible days, as required by HCFA Ruling 97-2 and the pertinent Federal Court decisions." (Ex. D at 12).

50. Additionally, Plaintiff submitted a supplemental filing containing a redacted version of the listing of Medicaid eligible days it contends should be included to the Board (supplemental filing attached as Exhibit E) shortly after the submission of its final position paper, titled "1115 Waiver and Additional ME Days Consolidated." (Ex. E at 3-32). It is clear, therefore, that the provider's language criticized as lacking "…the requisite specificity…" by the court in the *Evangelical Community Hospital* opinion is incomparable to Plaintiff's language in its initial

**Original Complaint for Judicial Review of Final Agency Action – Page 18**

appeal request, preliminary position paper, and final position paper, thus the Board's appeal thereto is arbitrary and capricious.

E.    *Dismissal of DSH Payment - Medicaid Eligible Days Issue.*

51.    The Board dismissed the DSH Payment - Medicaid Eligible Days issue stating that "Specifically, the Board finds that the Provider has failed to satisfy the requirements of 42 C.F.R. §§ 412.106(b)(4)(iii) [sic] and 405.1853(b)(2)-(3) and Board Rules 25.2.1 and 25.2.2 related to the submission of documentary evidence required to support its claims or describe why said evidence is unavailable." (Ex. A at 9).

52.    The Board's dismissal of the DSH Payment - Medicaid Eligible Days issue was also due to it finding "…that the Provider also failed to fully develop the merits of the Medicaid eligible days issue because the provider has failed to identify any specific Medicaid eligible days at issue (much less any supporting documentation for those days)." (*Id*. at 9-10).

53.    The Board further stated that it:

…rejects the Provider's attempts to include the eligible days listing uploaded to OH CDMS on November 25, 2025 (*purportedly, as a supplement to its November 25, 2025 final position paper*) because:

1.    The upload was filed ***4.5 years*** *after the deadline* for the exhibits to be included with the PPP filing consistent with Board Rule 25.2.2 (as authorized by 42 C.F.R. § 405.1853(b)(3)).

2.    The uploaded exhibit fails to explain the following critical information: (a) why it was being filed so late (*i.e.*, upon what basis or authority should the Board accept the late filing); and (b) *why* the listing of the roughly 5,640 days were not previously available, *in whole or in part* (*i.e.*, it is not clear why the Provider failed to identify a single day at issue until nearly 5 years after this appeal was filed and more than 8 years after the fiscal year at issue had closed).

3.    Neither the Board Rules, nor the November 24, 2020 Case Acknowledgment and Critical Due Dates notice, permit the Provider to file a 'Supplement' to its PPP (nor did the Provider allege in the upload that they do).

4. Given that the *material* facts (e.g., the days at issue) and all available exhibits were required to be part of the PPP filing, if the Board were to accept a 'Supplement,' it would need to be either be a *refinement* of its PPP or a supplement of documents that were identified in the PPP as being unavailable consistent with Board Rule 25.2.2. However, neither the appeal request, nor the PPP, identified any 'unavailable' exhibits consistent with Board Rule 25.2.2. Further, the uploaded listing cannot be considered a refinement of the position paper since no specific days or listing were included with the PPP (indeed the *tentative* 5,640 days listed in the late exhibit is, without explanation, *significantly* larger than the original estimated 50 days included with the appeal request). [*See, e.g.*, Board Rule 27.3 (Aug. 2018) stating: 'Except on written agreement of the parties, revised or supplemental position papers should not present new positions, arguments or evidence.']

5. Finally, pursuant to 42 C.F.R. § 412.106(b)(4)(iii) [sic], the Provider has the burden of proof 'to prove eligibility for **each** Medicaid patient day claimed' [(Emphasis added.)] and, pursuant to Board Rule 25, the Provider has the burden to present that evidence as part of its position paper filing unless it adequately explains therein why such evidence is unavailable. As the Provider failed to identify even a single Medicaid eligible day as being in dispute as part of the position paper filing (much less provide the § 412.106(b)(4)(iii) [sic] supporting documentation), notwithstanding its obligations under 42 C.F.R. §§ 412.106(b)(4)(iii) [sic] and 405.1853(b)(2)-(3) and Board Rule 25, the Board must find that there are no such days in dispute and that the actual amount in controversy is $0.

(Ex. A at 10) (emphasis in original).

F.    *The Secretary's Actions Violate the APA and Other Authorities.*

54.    Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "…shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "…reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "…reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

**Original Complaint for Judicial Review of Final Agency Action – Page 20**

55.    By the Secretary's own regulations regarding position papers as mentioned previously, 42 C.F.R. §§ 405.1853(b)(2)-(3) provides only:

(2) The Board has the discretion to extend the deadline for submitting a position paper. Each position paper must set forth the relevant facts and arguments regarding the Board's jurisdiction over each remaining matter at issue in the appeal (as described in § 405.1840 of this subpart), and the merits of the provider's Medicare payment claims for each remaining issue.

(3) In the absence of a Board order or general instructions to the contrary, any supporting exhibits regarding Board jurisdiction must accompany the position paper. Exhibits regarding the merits of the provider's Medicare payment claims may be submitted in a timeframe to be decided by the Board through a schedule applicable to a specific case or through general instructions.

This regulation does not require providers to enumerate in position papers the specific Medicaid eligible days at issue, which are important to the MAC's, but not the PRRB's, adjudication.  As stated above, 42 C.F.R. §§ 405.1853(b)(2)-(3) simply requires position papers to set forth the "relevant facts and arguments" regarding Board jurisdiction and the merits, with supporting exhibits.

56.    The Board's references to the Provider's obligations under 42 C.F.R. § 412.106(b)(4)(iii) are similarly unavailing. The Board is presumably referring to 42 C.F.R. § 412.106(b)(4)(**iv**), which provides that for the purposes of the ***MAC's calculation of the Medicaid Fraction***, the following applies:

(iv) The hospital has the burden of furnishing data adequate to prove eligibility for each Medicaid patient day claimed under this paragraph, and of verifying with the State that a patient was eligible for Medicaid during each claimed patient hospital day.

(Emphasis added).  Notwithstanding the Board's mistake, section 412.106 relates ***only*** to a provider furnishing data ***to the MAC*** for its DSH computation, and not to any requirement of what must be filed with the Board.  Neither 42 C.F.R. § 412.106(b)(4)(iii) nor §§ 405.1853(b)(2)-(3)

required the Provider to submit specific Medicaid eligible days with its preliminary nor final position papers.

57.    Plaintiff also was compliant with PRRB Board Rules, which do not require identification of specific Medicaid eligible days.  Board Rule 25 relates to the submission of documents necessary to support a provider's position. Board Rules specifically direct that protected health information or other personally identifiable information "is generally not necessary for documentation submitted to the Board."  Board Rule 1.4. Identification of specific Medicaid eligible days, while necessary for the MAC's ultimate <u>audit</u> of the Provider's claims, was not necessary for the PRRB's consideration of the <u>issue</u>.

58.    Furthermore, the Board's supposed conclusion that the "…actual amount in controversy is $0," (Ex. A at 10), was arbitrary and capricious.  Plaintiff's Preliminary Position Paper (attached as <u>Exhibit F</u>) specifically listed the reimbursement impact of the Medicaid Eligible Days issue as "$22,659."  (Ex. F at 20).  Additionally, Plaintiff stated that its claim "…that the total number of days reflected in its' [sic] 2017 cost report does not reflect an accurate number of Medicaid eligible days…" was "[b]ased on the Listing of Medicaid Eligible days being sent under separate cover." (*Id*. at 12).

59.    As stated *supra*, Plaintiff submitted a supplement to its ***final*** position paper on November 25, 2025, which included a redacted listing of Medicaid eligible days  titled "1115 Waiver and Additional ME Days Consolidated" and sent an unredacted version of the same listing to the MAC on the same day via FedEx (proof of mailing and delivery attached as <u>Exhibit G</u>). (Ex. E at 2-32).

60.    Notably, contrary to the Board's findings, Plaintiff's preliminary position paper specifically identified the "unavailable" exhibit of additional Medicaid eligible days that Plaintiff contended should be included in its DSH calculation, directly contradicting the Boards claim that

**Original Complaint for Judicial Review of Final Agency Action – Page 22**

neither Plaintiff's preliminary position paper nor its supplemental filing "…identified any 'unavailable' exhibits consistent with Board Rule 25.2.2." (Ex. A at 10; *see* Ex. F at 12, 17).

61.    Moreover, the Board's claim that Plaintiff's supplemental filing was not a "refinement" of its "PPP" filing was *arbitrary and capricious*. Plaintiff's November 25, 2025 filing was a clear "refinement" of its **final position paper** per Board Rule 27.3 of the August 29, 2018 version of the Board Rules, as its final position paper clearly states that the additional Medicaid eligible days which Plaintiff contended should be included in its Medicaid Fraction of its DPP were "Based on the Listing of Medicaid Eligible days being **sent under separate cover**, including Section 1115 waiver days (**redacted listing to follow**)," (Ex. D at 12) following the requirement under Board Rule 27.3 to contact the opposing party when filing a "supplemental position paper … to further refine or narrow the issues [in a final position paper]." (Emphasis added) *See* Board Rule 27.3 (2018).

62.    Following Plaintiff's notice to the MAC and as mentioned *supra*, Plaintiff mailed an unredacted listing of additional Medicaid eligible days to the MAC via FedEx on November 25, 2025. (Ex. G at 2).  Plaintiff submitted a redacted version of such listing to the Board on the same day (*see* Ex. E at 2), thereby "narrowing" the DSH Payment - Medicaid Eligible Days issue in its final position paper filing without including "new positions, arguments or evidence" other than an "unavailable" exhibit identified per Board Rules 27.3 and 25.2.2 as cited by the Board.

63.    After receiving and verifying state eligibility data, Plaintiff then mailed and emailed verified listings of Medicaid eligible and section 1115 waiver days as well as the state Medicaid eligibility response to the MAC to resolve the issue through an Administrative Resolution ("A.R.") package on January 28, 2026 (A.R. letter, proof of mailing and delivery, and Plaintiff's correspondence with the MAC attached as Exhibit H). (Ex. H at 2, 4). The MAC agreed to "…a postponement pending the Board's jurisdictional decision," but stated that it would "…not be

Original Complaint for Judicial Review of Final Agency Action – Page 23

auditing the listing unless and until the Board finds it has jurisdiction [over the DSH Payment - Medicaid Eligible Days issue]." (Ex. H at 8). On February 3, 2026, Plaintiff timely filed a request (attached as Exhibit I) to postpone the hearing scheduled for February 23, 2026 per Board Rule 30.3, mentioning that the postponement would "…give the parties sufficient time to finalize an Administrative Resolution…" because it had "…submitted a listing of addition Medicaid Eligible Days to the MAC." (Ex. I at 2).

64.     Notwithstanding the fact that identification of specific Medicaid eligible days is not necessary for the Board's adjudication, Plaintiff cannot be expected to produce a listing of days that have not yet been confirmed by the State. Given that Plaintiff supplemented its final position paper the same day of its submission with a listing of Medicaid eligible days and the Board was aware of the verified unredacted version of said listing submitted to the MAC prior to the Board's dismissal on February 6, 2026, the Board had more than enough information to confirm jurisdiction and properly adjudicate the issue. Due to the Board's and MAC's flawed understanding of the inherent retroactive nature of Medicaid eligibility, it was arbitrary and capricious of the Board to hold Plaintiff's initial 50 day estimate from its individual appeal request against it, disregard its submitted listings of additional Medicaid eligible days, find "…that the actual amount in controversy is $0," and dismiss Plaintiff's appeal.

VII.    CAUSES OF ACTION

Count I

Judicial Review Under the Medicare Act and the APA
(The Board's Dismissal of the Section 1115 Days "Sub-Issue" was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

65.     Plaintiff incorporates paragraphs 1-64 of this *Original Complaint* by reference.

**Original Complaint for Judicial Review of Final Agency Action – Page 24**

66.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id.* § 706(2)(E).

67.     The Board's dismissal of the section 1115 waiver days component of its appeal relating to Medicaid eligible days was ultra vires, arbitrary, capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count II

Judicial Review under 28 U.S.C. § 1331 and the APA
(The MAC's Determination was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

68.     Plaintiff incorporates paragraphs 1-67 of this *Original Complaint* by reference.

69.     The MAC's refusal to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) and audit and accept the Plaintiff Hospital's section 1115 waiver days was a final determination for which there is no administrative appeal.  Therefore, this Court has jurisdiction to hear Plaintiff's appeal of this final determination. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986).

70.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

71.     The MAC's refusal to comply with the Manual Instructions, which bound the MAC, was arbitrary, capricious, an abuse of discretion, and contrary to the Medicare Act.

## Count III

Due Process Violation

72.     Plaintiff incorporates paragraphs 1-71 of this *Original Complaint* by reference.

73.    It has a property right under the Fifth Amendment of the U.S. Constitution that requires the Secretary and the Secretary's agents to follow their own rules and give pre-deprivation and fair notice to the Plaintiff Hospital.

74.    By imposing an unlawful requirement that the Plaintiff specifically identify "Section 1115 waiver days" in its appeal request, the Board deprived it of due process because that requirement was contrary to the Secretary's regulations and because the Board's rules in effect at the time the Plaintiff Hospital filed its appeal request for a Board hearing did not give prior and fair notice of such a requirement.

Count IV

Mandamus

75.    Plaintiff incorporates paragraphs 1-74 of this *Original Complaint* by reference.

76.    Under 28 U.S.C. § 1361, federal district courts have "…original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

77.    The Secretary and its agents have the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment and the Board has the non-discretionary duty to apply properly laws relating to its jurisdiction.

78.     The MAC has refused to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023). These instructions require the MAC to accept audit and accept verified section 1115 waiver days for any appeal pending before the Board.

79.    The Manual Instructions provide an independent legal basis, outside of the appeal before the Board, for the Plaintiff Hospital's section 1115 waiver days to be included in the Medicaid Fraction of its Disproportionate Payment Percentage.

**Original Complaint for Judicial Review of Final Agency Action – Page 26**

80.      Plaintiff Hospital has exhausted its administrative remedies by demanding that the MAC audit and accept verified section 1115 waiver days.

## Count V

## All Writs Act

81.      Plaintiff incorporates paragraphs 1-80 of this *Original Complaint* by reference.

82.      The DSH payment at issue violated the Medicare Act and APA. Under the All Writs Act, 28 U.S.C. § 1651(a): "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

83.      This Court, properly seized of jurisdiction, should issue an order requiring CMS to make proper DSH payment to Plaintiff and pay appropriate underpayment interest thereon under 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

## Count VI

Judicial Review Under the Medicare Act
(The Board's Actions are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Contrary to Law because Rule 8 is Procedurally Invalid)

84.      Plaintiff incorporates paragraphs 1-83 of this *Original Complaint* by reference.

85.      Under 42 U.S.C. § 1395hh(b): "…the Secretary shall provide for notice of the proposed regulation in the Federal Register and a period of not less than 60 days for public comment thereon."

86.      As there was no public notice-and-comment period for Rule 8 of the August 21, 2008, version of the PRRB Rules, the August 29, 2018, version of Rule 8 acts as a logical extension of the initial publication of Rule 8, and Rule 8 was indeed a change in the "substantive legal standard" regarding payment for services under the Medicare Act, PRRB Rule 8 is invalid, and

**Original Complaint for Judicial Review of Final Agency Action – Page 27**

the Board's implementation of the August 29, 2018 version of Rule 8 in this case was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

## Count VII

Judicial Review Under the Medicare Act
(Board Rule 8 and the Board's Application of it to Dismiss the Section 1115 "Sub-Issue" are Inconsistent with Regulation and Board Rule 7 and Not in Accordance with Law)

87.     Plaintiff incorporates paragraphs 1-86 of this *Original Complaint* by reference.

88.     The Board only has the authority to make rules and establish procedures that are not inconsistent with statute or the regulations of the Secretary and that are necessary or appropriate to carry out the statutory provision authorizing the Board.

89.     Any requirement to identify components of issues is not in accordance with law. Any such requirement is not "necessary or appropriate to carry out the provisions" of the Medicare Act authorizing the PRRB appeals process and is inconsistent with statute and regulation.

90.     Moreover, the Board's requirement that providers must identify "sub-issues" or "components" of issues arbitrarily and capriciously denies providers, including Plaintiff Hospital, the appeal rights to which they are entitled by statute.

## Count VIII

Judicial Review Under the Medicare Act and APA
(The Board's Dismissal of the Medicaid Eligible Days Issue was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

91.     Plaintiff incorporates paragraphs 1-90 of this *Original Complaint* by reference.

92.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

93. The Board's dismissal of the DSH Payment – Medicaid Eligible Days issue was arbitrary, capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

### Count IX

Judicial Review Under the Medicare Act and the APA
(The Board's Disregard of Plaintiff's Supplement to Its Final Position Paper Filing, Jurisdictional Response, and Postponement Request was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

94. Plaintiff incorporates paragraphs 1-93 of this *Original Complaint* by reference.

95. The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

96. The Board's total disregard of Plaintiff's supplement to its final position paper filing, jurisdictional response, and postponement request was arbitrary, capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

### VIII.   REQUESTED RELIEF

For foregoing reasons, Plaintiff seeks an Order:

    a.    Reversing the Board's dismissal of the Medicaid eligible days issue and the section 1115 waiver days component of the appeal;

    b.    Compelling the Secretary to direct its MAC to audit Plaintiff Hospital's listing of section 1115 waiver and Medicaid eligible days, accept all verified days, and include them in the Medicaid Fraction of Plaintiff Hospital's DPP for purposes of its DSH Adjustment;

    c.    Awarding Plaintiff Hospital's costs and reasonable attorneys' fees, and for interest; and

    d.    Fashioning such other and further relief the Court deems appropriate.

Dated: April 7, 2026                     Respectfully submitted,

                                         */s/ Sean McKenna*
                                         Sean McKenna (Lead Attorney)
                                         Texas Bar No. 24007652
                                         Law Office of Sean McKenna, PLLC
                                         5473 Blair Road, Suite 100, PMB 755849
                                         Dallas, Texas 75231-4227
                                         Telephone: 469.348.3454
                                         Email: sean@seanmckennalaw.com

                                         Lynn M. Barrett
                                         Texas Bar No. 24147758
                                         Barrett Law, PA
                                         9100 Conroy Windermere Road, Suite 200
                                         Windermere, FL 34786
                                         Telephone: 954.540.3087
                                         Email: lynn@blhealthlaw.com

                                         *Attorneys for Plaintiff*

**Original Complaint for Judicial Review of Final Agency Action – Page 30**